UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**MATTHEW STURGILL,**

    **Plaintiff,**

v.                                             ACTION NO: 2:18cv566

**NORFOLK SOUTHERN RAILWAY CO.,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER

This matter comes before the court on the Defendant's Motion to Dismiss, ECF No. 7, and accompanying Brief in Support, ECF No. 8, filed on December 3, 2018. The Plaintiff filed a Memorandum of Law in Opposition ("Opposition") on December 12, 2018. ECF No. 10. The Defendant filed a Reply on December 18, 2018. ECF No. 12. The Motion to Dismiss has been fully briefed and is now ripe for review.

### I. BACKGROUND

Sturgill filed his Complaint in this court on October 24, 2018, ECF No. 1, and filed an Amended Complaint on November 15, 2018, ECF No. 6. The facts set forth herein are taken from Plaintiff Matthew Sturgill's ("Sturgill") Amended Complaint and are accepted as true for the purpose of deciding Defendant's Motion to Dismiss.[1] See, e.g., Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

---

[1] To the extent either party cites to facts not alleged in Sturgill's Amended Complaint, see, e.g., Br. Supp. at 3 n.2; Mem.

On April 16, 2018, Sturgill applied for a conductor position with Defendant Norfolk Southern Railway Co. ("Norfolk Southern"). Am. Compl. ¶ 6. Norfolk Southern offered Sturgill the position on May 30, 2018. Id. ¶ 7. Following a pre-employment physical, Norfolk Southern withdrew the offer. Id. ¶ 8. In the letter notifying Sturgill of the withdrawal, Norfolk Southern cited Sturgill's body mass index ("BMI") as the sole reason for the withdrawal. Id. In that letter, Norfolk Southern further stated that "during [his] examination, [Sturgill] indicated that [he] did not have an underlying physiological condition that could cause obesity." Id. ¶ 10 (alterations in original). Sturgill alleges he "made no such claim." Id.

Sturgill has "primary male hypogonadism, which is an underlying physiclogical [sic] condition that not only causes his obesity but also substantially limits his ability to enjoy and live a fulfilled life, if left untreated." Id. ¶ 11. "Primary male hypogonadism does not, however, prevent Sturgill from performing any of the essential functions of a conductor." Id. ¶ 12. Therefore, Sturgill alleges that when Norfolk Southern withdrew the job offer because of Sturgill's BMI, Norfolk Southern

---

Opp'n at 7; Reply at 14 n.2, the court will not consider those facts at this stage. See Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

discriminated against Sturgill on the basis of his disability, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 1210 et seq., as amended. Id. ¶¶ 1, 8, 11-13.

Sturgill claims that "Norfolk Southern's policy arises from a concern that employees with a high body mass index will develop sleep apena, diabetes, and/or heart disease and become incapacitated."[2] Id. ¶ 14. Thus, Sturgill alleges that Norfolk Southern also discriminated against him on the basis of a perceived disability in violation of the ADA. Id. ¶ 15. Sturgill further alleges that "Norfolk Southern has engaged in a pattern and practice of violating the ADA." Id. ¶ 16 (citing EEOC v. Norfolk Southern Corp., No. 2:17-cv-1251 (W.D. Penn.)).[3] Sturgill also alleges violations of the ADA for the withdrawal of the job offer, and he requests that the court find Norfolk Southern acted in direct violation of the ADA. Am. Compl. ¶¶ 17-26. As remedies for these violations, Sturgill requests that he be reinstated and awarded compensatory and punitive damages. Id. ¶ 27.

---

[2] The Amended Complaint does not include allegations of what the policy is that Sturgill alleges arises from these concerns. However, the court can reasonably infer at this stage that the policy alleged is one not to hire individuals with a high BMI, which is confirmed by Sturgill's Opposition. See Mem. Opp'n at 3.

[3] This allegation is a legal conclusion without any settled factual support for Sturgill's assertion. Sturgill cites to an ongoing case, EEOC v. Norfolk Southern Corp., No. 2:17-cv-1251 (W.D. Penn.). However, the dispute in that case has yet to be resolved, and accordingly, it does not provide factual support for Sturgill's legal conclusion here.

3

## II. STANDARD OF REVIEW

Pursuant to Rule 12(b)(6), a complaint must be dismissed when a plaintiff's allegations "fail[] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Facial plausibility means that a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). It is, therefore, not enough for a plaintiff to allege facts demonstrating a "sheer possibility" or "mere[] consist[ency]" with unlawful conduct. Id. (citing Twombly, 550 U.S. at 557).

The Supreme Court, in Twombly and Iqbal, offered guidance to courts evaluating a motion to dismiss:

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework

4

of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679. That is, the court accepts facts alleged in the complaint as true and views those facts in the light most favorable to the plaintiff. See, e.g., Venkatraman v. REI Sys., Inc., 417 F.3d 418, 420 (4th Cir. 2005). After doing so, the court should grant the defendant's motion if the plaintiff's "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," because "the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. ANALYSIS

Pursuant to 42 U.S.C. § 12112(a), "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring . . . or discharge of employees, . . . and other terms, conditions, and privileges of employment." Id. To establish a prima facie case of employment discrimination under the ADA, a plaintiff must prove (1) he has a "disability," (2) he is a "qualified individual," and (3) his employer took an adverse employment action against him because of his disability. Martinson v. Kinney Shoe Corp., 104 F.3d 683, 686 (4th Cir. 1997).

5

## A. Disability

The ADA defines "disability" in three ways. See 42 U.S.C. § 12102(1). First, an individual has a disability if he or she has "a physical or mental impairment that substantially limits one or more major life activities of such individual." Id. § 12102(1)(A). Second, an individual has a disability if he or she has "a record of such an impairment." Id. § 12102(1)(B). Third, an individual has a disability if he or she is "regarded as having such an impairment." Id. § 12102(1)(C).

Here, Sturgill claims he has a disability under the ADA's first and third definitions of "disability." Am. Compl. ¶¶ 1, 11, 14-15, 18-19. Specifically, Sturgill alleges his condition, primary male hypogonadism, is a physical impairment that "substantially limits his ability to enjoy and live a fulfilled life, if left untreated." Id. ¶ 11. Sturgill also alleges that Norfolk Southern regarded him as being disabled because Norfolk Southern is "concern[ed] that employees with a high body mass index will develop sleep apena, diabetes, and/or heart disease and become incapacitated." Id. ¶¶ 14-15.

### 1. Primary Male Hypogonadism Disability Claim

An individual has a disability if that individual has "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). Major life activities are defined to "include, but

are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." Id. § 12102(2)(A). Major life activities are further defined to "include[] the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." Id. § 12102(2)(B).

Norfolk Southern argues that Sturgill "has failed to plead facts that would plausibly demonstrate that his alleged hypogonadism and/or obesity substantially limit him in a major life activity, such that they would qualify as disabilities under the ADA." Br. Supp. at 2. However, Norfolk Southern's argument only addresses the definition of major life activities under § 12102(2)(A) and fails to acknowledge that the operation of major bodily functions are major life activities under § 12102(2)(B). See Br. Supp. at 8; Reply at 11-14.

Although it is not "axiomatic that an allegation of suffering from hypogonadism is an allegation of suffering from an impairment that substantially limits one or more of the sufferer's major life activities," as Sturgill suggests, Mem. Opp'n at 7, Sturgill has alleged that he suffers from primary male hypogonadism and that this condition causes his obesity, Am. Compl. ¶ 11. Viewing the

7

facts alleged in the light most favorable to Sturgill, the court can reasonably infer at this juncture that primary male hypogonadism substantially limits the operation of a major bodily function such that the condition causes Sturgill's obesity. Therefore, Sturgill has adequately pled that he has a disability, which is primary male hypogonadism.[4]

### 2. "Regarded As" Disability Claim

An individual is "'regarded as having such an impairment' if the individual . . . has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A).

---

[4] Although Sturgill asserts that "his high BMI . . . is a disability in its own right," and is a basis for Norfolk Southern's alleged discrimination against him, Mem. Opp'n at 2, Sturgill has not pled any facts that would enable the court to reasonably infer that his high BMI or his obesity, in and of itself, is a disability. Sturgill's allegations regarding his underlying physiological condition, primary male hypogonadism, only enable him to plausibly allege that his high BMI or obesity, <u>as caused by his primary male hypogonadism</u>, is a physical impairment. See <u>Morriss v. BNSF Ry. Co.</u>, 817 F.3d 1104, 1108 (8th Cir. 2016) ("[A]n individual's weight is generally a physical characteristic that qualifies as a physical impairment only if it falls outside the normal range and it occurs as the result of a physiological disorder."). However, for a physical impairment to be a "disability," it must substantially limit one or more major life activities. 42 U.S.C. § 12102(1)(A). Absent additional facts, the court is left with the conclusory allegation that Sturgill is disabled within the meaning of the ADA, Am. Compl. ¶ 18, which is insufficient to reasonably infer that his high BMI or obesity substantially limits him in a major life activity. Thus, Sturgill has failed to plead that his high BMI or obesity is itself a disability.

To succeed on a "regarded as" claim, Sturgill must show that he had an actual or perceived physical or mental impairment, and that Norfolk Southern withdrew its employment offer "because of" that impairment.

A physical impairment is "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine." 29 C.F.R. § 1630.2(h)(1). The Equal Employment Opportunity Commission ("EEOC") has issued interpretative guidance that distinguishes "between conditions that are impairments and physical, psychological, environmental, cultural, and economic characteristics that are not impairments." 29 C.F.R. § 1630 app. § 1630.2(h). "The definition of the term 'impairment' does not include physical characteristics such as . . . height, weight, or muscle tone that are within 'normal' range and are not the result of a physiological disorder. The definition, likewise does not include characteristic predisposition to illness or disease." Id.

Sturgill advances his "regarded as" claim under a theory that Norfolk Southern withdrew the job offer due to "a concern that employees with a high body mass index will develop sleep apnea, diabetes, and/or heart disease and become incapacitated." Am.

9

Compl. ¶ 14 (emphasis added). Norfolk Southern argues that "only current impairments may support a 'regarded as claim,'" and "the fear of [an employee developing] future conditions does not amount to 'regarded as' discrimination." Br. Supp. at 5 (citing Morriss v. BNSF Ry. Co., 817 F.3d 1104, 1113 (8th Cir. 2016)). Because "Sturgill has not plead [sic] facts that would establish that Norfolk Southern 'regarded' him as having a current condition that qualified as a disability," Norfolk Southern asserts that Sturgill's "regarded as" claim fails. Br. Supp. at 2.

The court is persuaded by the plain language of the EEOC's interpretative guidance, which states that a "characteristic predisposition to illness or disease" is not a "physical impairment." See 29 C.F.R. § 1630 app. § 1630.2(h). The court is further persuaded by the Eighth Circuit's reasoning in Morriss v. BNSF Ry. Co., 817 F.3d 1104 (8th Cir. 2016):

> The ADA does not prohibit discrimination based on a perception that a physical characteristic—as opposed to a physical impairment—may eventually lead to a physical impairment as defined under the Act. Instead, the plain language of the ADA prohibits actions based on an existing impairment or the perception of an existing impairment.

Id. at 1113 (emphasis added) (noting that § 12102 defines disability as a "physical impairment" or "being regarded as having such an impairment"). Accordingly, a "regarded as" claim must be based on allegations that a plaintiff had an existing impairment

or was perceived to have an existing impairment at the time the prohibited action was taken.

Sturgill does not allege that he had an existing impairment or was perceived to have an existing impairment that caused Norfolk Southern to withdraw the job offer.[5] See Am. Compl. Rather, he alleges that Norfolk Southern withdrew the job offer due to "a concern that employees with a high body mass index <u>will</u> develop" certain conditions. Am. Compl. ¶ 14 (emphasis added). This is merely an allegation that Norfolk Southern is concerned that a physical characteristic that may eventually lead to a physical impairment in the future, and it is insufficient to support a "regarded as" claim. See <u>Morriss</u>, 817 F.3d at 1113. Therefore,

---

[5] As discussed <u>supra</u> note 4, Sturgill has pled facts that would enable the court to reasonably infer that his obesity caused by his primary male hypogonadism is a physical impairment. To the extent Sturgill requests leave to amend "to include an allegation that Norfolk Southern was motivated to withdraw the job offer also by a belief that his BMI substantially limits one or more of his major life activities, including walking and climbing," Mem. Opp'n at 11 n.2, this would not cure the deficiencies in his "regarded as" claim. For a "regarded as" claim, Sturgill need not plead "whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A).

Rather, Sturgill must plead facts that would enable the court to infer that Norfolk Southern withdrew its offer of employment because it regarded Sturgill as suffering from obesity caused by his primary male hypogonadism. See <u>Francis v. City of Meriden</u>, 129 F.3d 281, 285 (2nd Cir. 1997) (concluding the plaintiff could not sustain a "regarded as" claim because he "only alleges that his employer disciplined him for failing to meet a general weight standard. He does not claim that his employer regarded him as suffering from a physiological weight-related disorder.").

11

Sturgill has not pled any facts that plausibly give rise to a "regarded as" claim.[6]

B. **Qualified Individual**

Under the ADA, a "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). "The term essential functions means the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1).

To support that he is a qualified individual under the ADA, Sturgill alleges that Norfolk Southern offered him the conductor position. Am. Compl. ¶ 7. Sturgill further alleges that his disability, primary male hypogonadism, "does not . . . prevent [him] from performing any of the essential functions of a conductor." Id. ¶ 12. Sturgill also includes the legal conclusion that he "is a qualified individual within the meaning of the ADA." Id. ¶ 20.

---

[6] In Sturgill's Opposition, he attempts to replead his "regarded as" claim under a new theory that Norfolk Southern regarded him as "suffer[ing] from the conditions—or perhaps more accurately the potential effects of the conditions—at the present time." Mem. Opp'n at 10-11. To the extent that Sturgill desires to advance his "regarded as" claim under this new theory, he will need to amend his pleadings to do so.

12

Norfolk Southern argues that Sturgill's Amended Complaint does not include "any allegations regarding how, despite his alleged substantial limitation he can perform the essential functions of his job." Br. Supp. at 3. In response, Sturgill asserts that the facts alleged in his Amended Complaint along with his legal conclusion that he is a qualified individual are sufficient at this stage. Mem. Opp'n at 12.

Sturgill has sufficiently pled that he is a "qualified individual." The court can reasonably infer that Sturgill could perform the essential functions of the conductor position from Norfolk Southern offering the position to him. See Am. Compl. ¶ 7. Sturgill's allegation that Norfolk Southern withdrew the job offer solely because of Sturgill's BMI, not because he was unable to perform any of the essential functions of the position, further supports this inference. See id. ¶ 8. The court can also reasonably infer that Sturgill was able to perform the essential functions of the conductor position without reasonable accommodations from Sturgill's allegation that his disability, primary male hypogonadism, "does not . . . prevent Sturgill from performing any of the essential functions of a conductor."[7] Id. ¶ 12. Therefore, Sturgill has sufficiently pled that he is a "qualified individual."

---

[7] To the extent Sturgill's Amended Complaint asserts that Norfolk Southern failed to accommodate his primary male hypogonadism under 42 U.S.C. § 12112(b)(5)(A), see Am. Compl. ¶ 22, Sturgill has not pled that he required any reasonable

13

## C. Causation

The ADA protects against discrimination "on the basis of disability." 42 U.S.C. § 12112(a). Thus, to establish a prima facie case of employment discrimination, a plaintiff must show that his employer took adverse action against him "because of" his disability. Martinson, 104 F.3d at 686. As a threshold matter, an employer must know of its employee's disability to act on the basis of that disability. Tramp v. Associated Underwriters, Inc., 768 F.3d 793, 805 (8th Cir. 2014) ("At a minimum, [a plaintiff] must show that the decisionmakers knew about her alleged disability."); Estate of Hoffman v. Baltimore City Pub. Sch., No. 98-1865, 1999 WL 61965, at *1 (4th Cir. Feb. 10, 1999) (per curiam) ("An employer must be aware of an individual's disability for ADA liability to exist." (citing Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 931 (7th Cir. 1995)).

---

accommodations for his primary male hypogonadism to be able to perform the essential functions of the conductor position, see Am. Compl. ¶ 12. Nor has Sturgill pled that Norfolk Southern refused a request to make reasonable accommodations for Sturgill's primary male hypogonadism. See Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 579 (4th Cir. 2015) ("To establish a prima facie case for failure to accommodate, [a plaintiff] must show: '(1) that [she] was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of [her] disability; (3) that with reasonable accommodation [she] could perform the essential functions of the position; and (4) that the employer refused to make such accommodations.'" (second and third alterations in original) (quoting Wilson v. Dollar Gen. Corp., 717 F.3d 337, 345 (4th Cir. 2013)).

14

Norfolk Southern argues that Sturgill's pleadings are deficient because he "has not and cannot allege that Norfolk Southern was aware of his alleged hypogonadism or that it was aware that his obesity was allegedly caused by this condition." Br. Supp. at 2. Sturgill concedes that Norfolk Southern "could not have discriminated against him on the basis of a disability of which it had no knowledge." Mem. Opp'n at 2. However, Sturgill advances two arguments in support of his contention that he has sufficiently alleged causation. First, he asserts that "his high BMI is a disability in and of itself and that Norfolk Southern regarded his high BMI as a disability, which means Norfolk Southern was prohibited from discriminating against Sturgill on the basis of his high BMI regardless of whether it knew of his underlying condition." Id. at 13. Second, he asserts that his high BMI is a symptom of his disability that is protected by the ADA. Id. at 2, 13. ("[T]he ADA protects employees from discrimination on the basis of a disability's symptoms just as it does from discrimination on the basis of the disability itself."). Both of Sturgill's arguments fail.

Sturgill's first argument fails because Sturgill has not sufficiently alleged that his high BMI or obesity was regarded by Norfolk Southern as a disability. Even though Sturgill has sufficiently alleged that his high BMI or obesity as caused by primary male hypogonadism is a physical impairment, see supra

Part III.A, he has not sufficiently alleged causation to support that Norfolk Southern withdrew its offer of employment because it regarded Sturgill as suffering from obesity caused by primary male hypogonadism. See Francis v. City of Meriden, 129 F.3d 281, 285 (2nd Cir. 1997) (concluding the plaintiff could not sustain a "regarded as" claim because he "only alleges that his employer disciplined him for failing to meet a general weight standard. He does not claim that his employer regarded him as suffering from a physiological weight-related disorder.").

Sturgill alleges that Norfolk Southern withdrew the job offer because of his BMI alone. Am. Compl. ¶ 8. Sturgill's BMI alone, without his underlying condition, is not a physical impairment. See Morriss, 817 F.3d at 1108. Further, Sturgill does not allege that Norfolk Southern was aware that Sturgill's BMI or obesity was caused by an underlying physiological disorder. See Am. Compl. Nor does Sturgill allege that Norfolk Southern was aware that Sturgill suffers from primary male hypogonadism. See id. Rather, Sturgill alleges that Norfolk Southern thought Sturgill did not have an underlying physiological condition that could cause his obesity.[8]

---

[8] In the letter Norfolk Southern sent withdrawing Sturgill's job offer, Norfolk Southern stated that "during [his] examination, Sturgill indicated that [he] did not have an underlying physiological condition that could cause obesity." Am. Compl. ¶ 10 (alterations in original). However, Sturgill alleges he "made no such claim." Id. Sturgill's allegation, that he did not make such an indication to Norfolk Southern, does not alone lead to any reasonable inference that he otherwise told Norfolk Southern about

16

See id. ¶ 10. Therefore, Sturgill has not pled facts sufficient for the court to reasonably infer that Norfolk Southern withdrew its offer because it regarded his BMI or obesity as being caused by primary male hypogonadism.

Sturgill's second argument, that his high BMI is a symptom of his disability that is protected by the ADA, also fails. A symptom of a disability can be sufficient to support an ADA claim when either (1) the employer knew the symptoms were caused by the disability or (2) the "symptoms are so obviously manifestations of an underlying disability that it would be reasonable to infer that an employer actually knew of the disability." Hedberg v. Ind. Bell Tel. Co., Inc., 47 F.3d 928, 934 (7th Cir. 1995). In the case at bar, Sturgill has not alleged that Norfolk Southern knew that Sturgill's high BMI was caused by an underlying condition. See Am. Compl. ¶ 10; supra note 8. Nor has Sturgill pled any facts sufficient for the court to reasonably infer that Sturgill's high BMI was in anyway remarkable such that it could only be caused by or was "so obviously" a manifestation of an underlying physiological condition.

Accordingly, the court is unable at this juncture to reasonably infer that Norfolk Southern withdrew the job offer because of Sturgill's primary male hypogonadism or his high BMI

---

his underlying condition or that Norfolk Southern otherwise learned of his underlying condition.

caused by primary male hypogonadism. Therefore, Sturgill has failed to sufficiently plead causation.[9]

### IV. LEAVE TO AMEND

"[A] party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "A district court may deny a motion to amend when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile." Equal Rights Ctr. v. Niles Bolton Assocs., 602 F.3d 597, 603 (4th Cir. 2010).

---

[9] "Both disparate-treatment and disparate-impact claims are cognizable under the ADA." Raytheon Co. v. Hernandez, 540 U.S. 44, 53 (2003) (citing 42 U.S.C. § 12112(b)). Sturgill's Amended Complaint raises disparate-treatment claims under 42 U.S.C. §§ 12112(a) and 12112(b)(5)(A). See Am. Compl. ¶¶ 21-22. To establish a disparate-treatment claim, a plaintiff must show that his or her disability "actually motivated the employer's decision." Raytheon Co., 540 U.S. at 52 (quoting Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993)).

"By contrast, disparate-impact claims 'involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity.'" Id. (quoting Teamsters v. United States, 431 U.S. 324, 335 n.15 (1977)). If Sturgill seeks to raise a disparate-impact claim to challenge an alleged policy that Norfolk Southern may have regarding individuals with high BMIs, see supra note 2, he will need to amend his pleadings to do so. See Raytheon Co., 540 at 55 (holding a court may not consider the disparate impact of a company's policy when evaluating a disparate-treatment claim).

Sturgill proposes amending his Amended Complaint to supply some additional factual support for his allegations. Mem. Opp'n at 8 n.1, 11 n.2. Although those additional facts might not be enough to correct all the deficiencies in Sturgill's Amended Complaint, see, e.g., supra note 5, the amendment would not necessarily be futile. Further, giving Sturgill one more chance to amend his complaint would not be prejudicial to Norfolk Southern, and there are no allegations that Sturgill has acted in bad faith. Therefore, the court will give Sturgill one last chance to plead facts sufficient to support a prima facie case of disability discrimination.

## V. CONCLUSION

Norfolk Southern's Motion to Dismiss is **GRANTED** because the facts alleged in Sturgill's Amended Complaint, viewed in the light most favorable to him, fail to establish a prima facie case of disability discrimination, namely causation. The court also **GRANTS** Sturgill leave to file a seconded amended complaint. Accordingly, Sturgill's Amended Complaint is **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND**. A second amended complaint must be filed within thirty (30) days of the date of this Memorandum Opinion and Order. If a second amended complaint is not filed within thirty (30) days, the court will close this case.

The Clerk is **DIRECTED** to forward a copy of this Memorandum Opinion and Order to counsel for all parties.

**IT IS SO ORDERED.**

/s/
Rebecca Beach Smith
United States District Judge

REBECCA BEACH SMITH
UNITED STATES DISTRICT JUDGE

March 6, 2019