**MATTHEW STURGILL,**

      **Plaintiff,**

**v.**                          **ACTION NO: 2:18cv566**

**NORFOLK SOUTHERN RAILWAY CO.,**

      **Defendant.**

## OPINION

This matter comes before the court on the Defendant's Motion to Dismiss Second Amended Complaint, ECF No. 16, and accompanying Brief in Support, ECF No. 17. The Plaintiff filed a Memorandum of Law in Opposition ("Memorandum in Opposition"), ECF No. 18, and the Defendant filed a Reply, ECF No. 19. The Motion to Dismiss Second Amended Complaint has been fully briefed and is now ripe for review.[1]

## I.  BACKGROUND

Plaintiff Matthew Sturgill ("Sturgill") filed his Complaint in this court on October 24, 2018, ECF No. 1, and filed an Amended Complaint ("First Amended Complaint") on November 15, 2018, ECF No. 6. On March 6, 2019, the court issued a Memorandum Opinion and Order granting Defendant's first Motion to Dismiss, ECF No. 7, without prejudice and with leave to amend. ECF No. 14. On March 22,

---

[1] An Index is attached hereto and made part hereof for references purposes only.

2019, Sturgill filed a Second Amended Complaint. ECF No. 15. The facts set forth herein are taken from Plaintiff Matthew Sturgill's ("Sturgill") Second Amended Complaint and are accepted as true for the purpose of deciding Defendant's current Motion to Dismiss. See, e.g., Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

On April 16, 2018, Sturgill applied for a conductor position with Defendant Norfolk Southern Railway Co. ("Norfolk Southern"). Second Am. Compl. ¶ 6. Norfolk Southern offered Sturgill the position on May 30, 2018. Id. ¶ 7. Following a pre-employment physical, Norfolk Southern withdrew the offer. Id. ¶ 8. In the letter notifying Sturgill of the withdrawal, Norfolk Southern cited Sturgill's body mass index ("BMI") as the sole reason for the withdrawal. Id. In that letter, Norfolk Southern further stated that "during [his] examination, [Sturgill] indicated that [he] did not have an underlying physiological condition that could cause obesity." Id. ¶ 10 (alterations in original). Sturgill alleges he "made no such claim." Id.

Sturgill has "primary male hypogonadism, which is an underlying physiclogical [sic] condition that not only causes his obesity but also substantially limits his ability to enjoy and live a fulfilled life, if left untreated." Id. ¶ 11. Specifically, primary male hypogonadism causes Sturgill "to suffer from a high body mass index, muscle weakness, and fatigue." Id. ¶ 13. Additionally, "Sturgill's body mass index, in and of itself,

2

substantially limits his ability to enjoy and live a fulfilled life," by causing "him to be in pain, have difficulty performing physical functions, and be self-consious [sic]." Id. ¶¶ 14, 16. "Neither his primary male hypogonadism, his high body mass index, nor the effects of those disabilities, however, prevent Sturgill from performing any of the essential functions of a conductor." Id. ¶ 17. Further, "Sturgill can perform each of a conductor's essential functions without any accommodation." Id. ¶ 18.

Sturgill alleges that "Norfolk Southern knows that a high body mass index is almost always causally related to a disability or disabilities." Id. ¶ 21. "While Norfolk Southern may not have know [sic] that Sturgill sufferd [sic] from primary male hypogonadism, it therefore knew that he suffered from some disability and was discriminating against him on that basis." Id. ¶ 22. Therefore, Sturgill claims that when Norfolk Southern withdrew the job offer because of Sturgill's BMI, Norfolk Southern discriminated against Sturgill on the basis of his disability, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 1210 et seq., as amended. Id. ¶¶ 1, 8, 19, 22.

Sturgill also alleges that "[s]uch discrimination is pursuant to a policy of not hiring employees with a high body mass index." Id. ¶ 20. This policy arises from two concerns. Id. ¶¶ 23-24. First, the policy "arises from a concern that [employees with] high body mass indexes are not good emplyees [sic]." Id. ¶ 23.

Second, the policy "arises from a concern that employees with a high body mass index suffer from sleep apnea, diabetes, and/or heart disease, which Norfolk Southern believes could caused [sic] them to become incapacitated." Id. ¶ 24. The conditions of sleep apnea, diabetes, and heart disease impact the individuals suffering from those conditions in a variety of ways. Id. ¶¶ 25-27. Sleep apnea causes its sufferes [sic] to be tired, have headaches, and/or be depressed." Id. ¶ 25. "Diabetes can kill its sufferers, cause them to have blurry vision, and cause them to be fatigued." Id. ¶ 26. "Heart disease can kill its sufferes [sic], cause them to be in pain and/or cause them to be nauseaus [sic]." Id. ¶ 27.

Thus, Sturgill claims that "[p]ursuant to its policy, Norfolk Southern regarded Sturgill as having sleep apnea, diabetes, and/or heart disease, and withdrew its offer because it was concerned those disabilities would incapacitate him." Id. ¶ 28. And, therefore, "Norfolk Southern also discriminated against Sturgill on the basis of a perceived disability." Id. ¶ 29. Sturgill further claims that "Norfolk Southern has engaged in a pattern and practice of violating the ADA." Id. ¶ 30 (citing EEOC v. Norfolk Southern Corp., No. 2:17-cv-1251 (W.D. Penn.)).[2]

---

[2] In the court's March 6, 2019 Memorandum Opinion and Order, the court determined that this allegation is a legal conclusion without any settled factual support. Mem. Op. & Order at 3 n.3. Sturgill still cites to an ongoing case, EEOC v. Norfolk Southern Corp., No. 2:17-cv-1251 (W.D. Penn.), which does not provide

In sum, Sturgill alleges violations of the ADA for the withdrawal of the job offer, and he requests a finding that Norfolk Southern acted in direct violation of the ADA. Id. ¶¶ 31-40. As remedies for these violations, Sturgill requests that he be reinstated and awarded compensatory and punitive damages. Id. ¶ 41.

## II. STANDARD OF REVIEW

Pursuant to Rule 12(b)(6), a complaint must be dismissed when a plaintiff's allegations "fail[] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Facial plausibility means that a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). It is, therefore, not enough for a

---

factual support for Sturgill's legal conclusion because the dispute in that case has yet to be resolved.

plaintiff to allege facts demonstrating a "sheer possibility" or "mere[] consist[ency]" with unlawful conduct. Id. (citing Twombly, 550 U.S. at 557).

The Supreme Court, in Twombly and Iqbal, offered guidance to courts evaluating a motion to dismiss:

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679. That is, the court accepts facts alleged in the complaint as true and views those facts in the light most favorable to the plaintiff. See, e.g., Venkatraman v. REI Sys., Inc., 417 F.3d 418, 420 (4th Cir. 2005). After doing so, the court should grant the defendant's motion if the plaintiff's "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," because "the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

### III. DISPARATE-TREATMENT CLAIM

Pursuant to 42 U.S.C. § 12112(a), "No covered entity shall discriminate against a qualified individual on the basis of

disability in regard to job application procedures, the hiring . . . or discharge of employees, . . . and other terms, conditions, and privileges of employment." Id. To establish a prima facie case of employment discrimination on a theory of disparate treatment under the ADA, a plaintiff must prove (1) he has a "disability," (2) he is a "qualified individual,"[3] and (3) his employer took an adverse employment action against him because of his disability. Martinson v. Kinney Shoe Corp., 104 F.3d 683, 686 (4th Cir. 1997).

## A.   Disability

The ADA defines "disability" in three ways. See 42 U.S.C. § 12102(1). First, an individual has a disability if he or she has "a physical or mental impairment that substantially limits one or more major life activities of such individual." Id. § 12102(1)(A). Second, an individual has a disability if he or she has "a record of such an impairment." Id. § 12102(1)(B). Third, an individual has a disability if he or she is "regarded as having such an impairment." Id. § 12102(1)(C).

Here, Sturgill claims he has a disability under the ADA's first and third definitions of "disability." Second Am. Compl.

---

[3] The court previously concluded that Sturgill's allegations in his First Amended Complaint were sufficient to plausibly allege that his he is a qualified individual. Mem. Op. & Order at 12-13. Sturgill's Second Amended Complaint adds allegations that further support that conclusion. See Second Am. Compl. ¶¶ 17-18.

¶¶ 1, 11, 13-14, 16, 19-29. Specifically, Sturgill alleges his condition, primary male hypogonadism, is a physical impairment that "substantially limits his ability to enjoy and live a fulfilled life, if left untreated," by causing "him to suffer from a high body mass index, muscle weakness, and fatigue." Id. ¶¶ 11, 13.[4] Sturgill also alleges his BMI is a physical impairment that "substantially limits his ability to enjoy and live a fulfilled life," by causing "him to be in pain, have difficulty performing physical functions, and be self-consious [sic]." Id. ¶¶ 14, 16. Sturgill further alleges that "Norfolk Southern regarded Sturgill as having sleep apnea, diabetes, and/or heart disease." Id. ¶ 28.

### 1. Body Mass Index Disability Claim

An individual has a disability if that individual has "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). Major life activities are defined to "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating,

---

[4] The court previously concluded that Sturgill's allegations in his First Amended Complaint were sufficient to plausibly allege that his primary male hypogonadism is a disability. Mem. Op. & Order at 7-8. Sturgill's Second Amended Complaint adds allegations that further support that conclusion. See Second Am. Compl. ¶¶ 12-13.

thinking, communicating, and working." Id. § 12102(2)(A). Major life activities are further defined to "include[] the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." Id. § 12102(2)(B). To adequately plead that his BMI alone is a disability, Sturgill must plead facts to show that his BMI alone is (1) a physical impairment that (2) substantially limits one or more major life activities. Id. § 12102(1)(A).

Norfolk Southern argues that "Sturgill's BMI is not and cannot be a stand-alone disability." Br. Supp. at 9. To the extent Sturgill asserts his high BMI itself is a disability, Mem. Opp'n at 7-10, the court agrees with Norfolk Southern that it is not. The court's March 6, 2019 Memorandum Order and Opinion previously held that "Sturgill's BMI alone, without his underlying condition, is not a physical impairment." Mem. Op. & Order at 16 (citing Morriss v. BNSF Ry. Co., 817 F.3d 1104, 1108 (8th Cir. 2016)); see id. at 8 n.4 ("Sturgill's allegations regarding his underlying physiological condition, primary male hypogonadism, only enable him to plausibly allege that his high BMI or obesity, as caused by his primary male hypogonadism, is a physical impairment." (citing Morriss, 817 F.3d at 1108)). Sturgill has not added any new

9

allegations, made any new arguments, or cited to any new authority that would require the court to alter its prior holding.[5]

The only new allegations regarding Sturgill's BMI relate to how his BMI "substantially limits his ability to enjoy and live a fulfilled life," by causing "him to be in pain, have difficulty performing physical functions, and be self-consious [sic]." Id. ¶¶ 14, 16. Even if these allegations adequately plead that Sturgill's BMI substantially limits a major life activity, see Mem. Op. & Order at 8 n.4, these allegations do not overcome the fact that Sturgill's BMI alone is not a physical impairment. Thus, because Sturgill's BMI alone is not a physical impairment, Sturgill has not pled that his BMI alone is a disability.[6]

_____

[5] The court notes that contrary to Sturgill's characterization of the authorities he cites, those authorities actually support the court's conclusion that BMI, weight, or obesity alone does not constitute a physical impairment, and a plaintiff must plead that his BMI is caused by some underlying physiological disorder. See Mem. Opp'n at 7-10.

[6] To the extent Sturgill alleges that his BMI as caused by his primary male hypogonadism is a disability, the court has previously found that this is a physical impairment. Mem. Op. & Order at 8 n.4 (citing Morriss, 817 F.3d at 1108). From Sturgill's new allegation that his high BMI causes him "to be in pain" and "have difficulty performing physical functions," Second Am. Compl. ¶ 16, the court can reasonably infer that Sturgill's high BMI as caused by his primary male hypogonadism substantially limits his ability to physically move and perform to major life activities such as walking, standing, lifting, or bending. See 42 U.S.C. § 12102(2)(A). Thus, Sturgill has adequately pled that his high BMI as caused by his primary male hypogonadism is a disability.

## 2. "Regarded As" Disability Claim

An individual is "'regarded as having such an impairment' if the individual . . . has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). To succeed on a "regarded as" claim, Sturgill must show that he had an actual or perceived physical or mental impairment, and that Norfolk Southern withdrew its employment offer "because of" that impairment.

A physical impairment is "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine." 29 C.F.R. § 1630.2(h)(1). The Equal Employment Opportunity Commission ("EEOC") has issued interpretative guidance that distinguishes "between conditions that are impairments and physical, psychological, environmental, cultural, and economic characteristics that are not impairments." 29 C.F.R. § 1630 app. § 1630.2(h). "The definition of the term 'impairment' does not include physical characteristics such as . . . height, weight, or muscle tone that are within 'normal' range and are not the result

of a physiological disorder. The definition, likewise does not include characteristic predisposition to illness or disease." Id.

Norfolk Southern advances three arguments in support of its Motion to Dismiss Sturgill's "regarded as" claim. First, Norfolk Southern argues that Sturgill continues to advance his "regarded as" claim on a theory that Norfolk Southern was concerned that Sturgill would later develop sleep apnea, diabetes, and/or heart disease and become incapacitated. Br. Supp. at 14-15, 20-21. The court agrees with Norfolk Southern that Sturgill's "regarded as" claim fails to the extent he still seeks to proceed on this theory. See Mem. Op. & Order at 8-12. As the court previously held, Sturgill must allege he had an existing impairment or was perceived to have an existing impairment that caused Norfolk Southern to withdraw the job offer. Id. at 10-11.

Second, Norfolk Southern argues that "Sturgill's regarded-as claim fails because he does not allege that Norfolk Southern regarded his obesity as caused by an underlying physiological disorder." Br. Supp. at 15-18. The court agrees with Norfolk Southern that Sturgill's Second Amended Complaint does not add any allegations to support a reasonable inference that Norfolk Southern regarded Sturgill as having a high BMI as caused by primary male hypogonadism. See Mem. Op. & Order at 11 n.5 (citing Francis v. City of Meriden, 129 F.3d 281, 285 (2nd Cir. 1997)).

Sturgill has added a general assertion to his Second Amended Complaint that "Norfolk Southern knows that a high body mass index is <u>almost always</u> causally related to a disability or disabilities." Id. ¶ 21 (emphasis added). However, Sturgill does not plead that a high BMI is <u>always</u> caused by an underlying physiological disorder that qualifies as a disability. Sturgill also does not plead any allegations to support that Norfolk Southern viewed or had any reason to view his high BMI in particular as causally related to and underlying physiological disorder. See <u>Francis</u>, 129 F.3d at 285 (concluding the plaintiff could not sustain a "regarded as" claim because he "only alleges that his employer disciplined him for failing to meet a general weight standard. He does not claim that his employer regarded him as suffering from a physiological weight-related disorder").

The most the court can reasonably infer from Sturgill's new allegation is that Norfolk Southern generally knew that an employee's high BMI <u>could be</u> caused by an underlying physiological disorder. The court cannot reasonably infer that Norfolk Southern knew that Sturgill's high BMI was caused by an underlying physiological disorder such that Norfolk Southern regarded Sturgill as having a high BMI caused by an underlying physiological condition. Sturgill's allegation that Norfolk Southern thought Sturgill <u>did not</u> have an underlying physiological condition that

could cause his obesity further prevents this conclusion. See Second Am. Compl. ¶ 10; Mem. Op. & Order at 16 n.8.

Third, Norfolk Southern argues that Sturgill's "regarded as" claim fails "because his allegation that Norfolk Southern believes that some people with a high BMI suffer from sleep apnea, etc., does not plausibly support his legal conclusion that Norfolk Southern regarded him as suffering from that or any other condition." Br. Supp. at 18-20. Sturgill asserts that he "has sufficiently alleged that Norfolk Southern regarded him as suffering from sleep apnea, diabetes, and heart disease." Mem. Opp'n at 13-14.[7]

From the allegations in Sturgill's Second Amended Complaint, the court can reasonably infer that Norfolk Southern perceived Sturgill as suffering from an existing physical impairment, that is, sleep apnea, diabetes, and/or heart disease. Second Am. Compl. ¶¶ 1, 8, 20, 23-29. Norfolk Southern withdrew its offer of employment because of Sturgill's high BMI. Id. ¶ 8. Norfolk Southern has a policy of not hiring individuals with high BMIs.

---

[7] Sturgill also advances his "regarded as" claim under the theory "that Norfolk Southern regarded his high BMI as a physical or mental impairment that substantially limits one or more major life activities." Id. at 11-13. As the court previously held, and discussed supra Part III.A.1, Sturgill's high BMI alone is not a physical impairment. Mem. Op. & Order at 16. Sturgill's physical impairment is his high BMI as caused by his primary male hypogonadism. See supra note 6.

Id. ¶ 20. That policy arises from a concern that individuals with high BMIs suffer from sleep apnea, diabetes, and/or heart disease. Id. ¶ 24. From Norfolk Southern's alleged policy not to hire individuals with high BMIs due to a concern that these employees suffer from sleep apnea, diabetes, and/or heart disease, the court can reasonably infer that Norfolk Southern perceives individuals with high BMIs as suffering from sleep apnea, diabetes, and/or heart disease.

Sleep apnea, diabetes, and heart disease are all physiological conditions that affect one or more body systems. Id. ¶ 25 (noting sleep apnea causes fatigue, headaches, and/or depression); id. ¶ 26 (noting diabetes causes death, blurry vision, and fatigue); id. ¶ 27 (noting heart disease causes death, pain, and/or nausea). Thus, sleep apnea, diabetes, and heart disease are all physical impairments under the ADA. See 29 C.F.R. § 1630.2(h)(1). Accordingly, Sturgill's allegation that Norfolk Southern perceives individuals with high BMIs as suffering from physical impairments, namely, sleep apnea, diabetes, and/or heart disease suffices at this juncture in the case on a Motion to Dismiss, as the court draws all reasonable inferences in favor of the plaintiff.

In sum, the court can reasonably infer that when Norfolk Southern withdrew its offer of employment on the basis of Sturgill's high BMI, it did so pursuant to its policy, which viewed

15

Sturgill as presently suffering from a physical impairment, namely, sleep apnea, diabetes, and/or heart disease.[8]

## B. Causation

The ADA protects against discrimination "on the basis of disability." 42 U.S.C. § 12112(a). Thus, to establish a prima facie case of employment discrimination, a plaintiff must show that his employer took adverse action against him "because of" his disability. Martinson, 104 F.3d at 686. As a threshold matter, an employer must know of its employee's disability to act on the basis of that disability. Tramp v. Associated Underwriters, Inc., 768 F.3d 793, 805 (8th Cir. 2014) ("At a minimum, [a plaintiff] must show that the decisionmakers knew about her alleged disability."); Estate of Hoffman v. Baltimore City Pub. Sch., No. 98-1865, 1999 WL 61965, at *1 (4th Cir. Feb. 10, 1999) (per curiam) ("An employer must be aware of an individual's disability for ADA liability to

---

[8] To the extent Norfolk Southern argues that the "could caused [sic] them to become incapacitated" language in paragraph 24 of the Second Amended Complaint changes Sturgill's allegation from an existing to a future impairment, the court disagrees. Br. Supp. at 20-21. The court understands Sturgill's allegation that Norfolk Southern's policy "arises from a concern that individuals with high BMIs suffer from sleep apnea, diabetes, and/or heart disease" to be in the present tense. Second Am. Compl. ¶ 24 (emphasis added). The fact that Sturgill has also alleged that Norfolk Southern believes these conditions could cause incapacitation at a later date, id., does not change Sturgill's allegation that Norfolk Southern's policy views individuals with high BMIs as presently having a physical impairment.

exist." (citing <u>Hedberg v. Indiana Bell Tel. Co.</u>, 47 F.3d 928, 931 (7th Cir. 1995)).

With respect to Sturgill's actual disability claim, the court has found that Sturgill has adequately pled that his primary male hypogonadism is a disability, and that his high BMI as caused by his primary male hypogonadism is a disability. <u>See</u> <u>supra</u> notes 4 & 6. Norfolk Southern argues that it "could not have discriminated against Sturgill <u>because of</u> hypogonadism," as "Sturgill still has not alleged that Norfolk Southern actually knew about his hypogonadism." Br. Supp. at 8. Norfolk Southern also argues that

> Sturgill's allegation that Norfolk Southern must have known that he had some underlying physiological disorder just because it knew he had a high BMI is a reiteration of his already-rejected argument in support of his [First Amended Complaint], that his obesity alone put Norfolk Southern on notice of his underlying disorder.

<u>Id.</u> at 12. Sturgill does not directly respond to these arguments, instead he argues that his BMI alone is a disability, Mem. Opp'n at 7-10, and Norfolk Southern plainly withdrew its offer on the basis of his BMI, Second Am. Compl. ¶ 8. As discussed <u>supra</u> Part III.A.1, Sturgill's BMI alone is not a disability.

The court previously concluded that Sturgill failed to adequately plead causation because Sturgill's First Amended Complaint did not contain any facts from which the court could "reasonably infer that Norfolk Southern withdrew the job offer

17

because of Sturgill's primary male hypogonadism or his high BMI as caused by primary male hypogonadism." Mem. Op. & Order at 17-18. In his Second Amended Complaint, Sturgill does not allege that Norfolk Southern was aware that he suffers from primary male hypogonadism. See Second Am. Compl. Nor has Sturgill added any allegation that Norfolk Southern had any particularized reason to believe that Sturgill's BMI or obesity was caused by an underlying physiological disorder. See id. Rather, Sturgill merely added a general assertion that "Norfolk Southern knows that a high body mass index is <u>almost always</u> causally related to a disability or disabilities," and "it therefore knew that he suffered from some disability and was discriminating aganst [sic] him on that basis." <u>Id.</u> ¶¶ 21-22 (emphasis added).

Even taking this new allegation as true and in the light most favorable to Sturgill, the court agrees with Norfolk Southern that this new allegation simply restates causation arguments previously addressed and rejected by the court. Mem. Op. & Order at 17-18 ("Nor has Sturgill pled any facts sufficient for the court to reasonably infer that Sturgill's high BMI was in anyway remarkable such that it could only be caused by or was 'so obviously' a manifestation of an underlying physiological condition."). In effect, Sturgill again asserts that his high BMI alone put Norfolk Southern on notice of his underlying physiological condition because "a high body mass index is <u>almost always</u> causally related

to a disability." See Second Am. Compl. ¶ 21 (emphasis added). A high BMI may often be caused by an underlying physiological condition, however, Sturgill still has not pled any facts to support an inference that his high BMI was in any way remarkable such that it would put Norfolk Southern on notice that Sturgill's high BMI was causally related to an underlying physiological condition. Moreover, Sturgill continues to allege that that Norfolk Southern thought Sturgill did not have an underlying physiological condition that could cause his obesity. Second Am. Compl. ¶ 10; see also Mem. Op. & Order at 16 n.8. Thus, Sturgill has not pled any facts to support a claim that Norfolk Southern discriminated against him because of his primary male hypogonadism or his high BMI as caused by primary male hypogonadism.

With respect to Sturgill's "regarded as" disability claim, as the court concluded supra Part III.A.2, Sturgill has adequately pled that when Norfolk Southern withdrew its offer of employment on the basis of Sturgill's high BMI, it did so pursuant to its policy, which perceived Sturgill as suffering from a physical impairment, namely, sleep apnea, diabetes, and/or heart disease. Therefore, Sturgill has adequately pled that Norfolk Southern withdrew its offer of employment on the basis of a perceived disability, thereby meeting the causation requirement.

## IV. DISPARATE-IMPACT CLAIM

"Both disparate-treatment and disparate-impact claims are cognizable under the ADA." Raytheon Co. v. Hernandez, 540 U.S. 44, 53 (2003) (citing 42 U.S.C. § 12112(b)). Sturgill's Second Amended Complaint raises disparate-treatment claims under 42 U.S.C. §§ 12112(a) and 12112(b)(5)(A). See Second Am. Compl. ¶¶ 35-36.[9] To establish a disparate-treatment claim, a plaintiff must show that his or her disability or perceived disability "actually motivated the employer's decision." Raytheon Co., 540 U.S. at 52 (quoting Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993)). The court has concluded that Sturgill has a disparate-treatment claim, namely, a "regarded as" claim. See supra Part III.

"By contrast, disparate-impact claims 'involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity.'" Id. (quoting

---

[9] To the extent Sturgill's Second Amended Complaint asserts that Norfolk Southern failed to accommodate his primary male hypogonadism or BMI as caused by his primary male hypogonadism under 42 U.S.C. § 12112(b)(5)(A), see Second Am. Compl. ¶ 36, Sturgill has not pled that he required any reasonable accommodations to be able to perform the essential functions of the conductor position; in fact, he pled that he did not need any accommodation to perform the conductor position. See id. ¶ 18 ("Sturgill can perform each of a conductor's essential functions without any accommodation."). Nor has Sturgill pled that Norfolk Southern refused a request to make reasonable accommodations for Sturgill's primary male hypogonadism. See Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 579 (4th Cir. 2015). Thus, Sturgill has not pled a failure to accommodate claim.

Teamsters v. United States, 431 U.S. 324, 335-36 n.15 (1977)). As
the court previously noted, if Sturgill wanted to raise a
disparate-impact claim to challenge an alleged policy that Norfolk
Southern may have regarding individuals with high BMIs, he needed
to amend his pleadings to do so. Mem. Op. & Order at 18 n.9 (citing
Raytheon Co., 540 U.S. at 55).

Sturgill's Memorandum in Opposition states, for the first
time in this case, that Sturgill is pursuing a disparate-impact
claim under 42 U.S.C. § 12112(b)(6). Mem. Opp'n at 1-2, 5-6.
However, Sturgill's Second Amended Complaint is devoid of any facts
to support a disparate-impact claim. See Second Am. Compl. At a
threshold level, Sturgill has not alleged a facially neutral
employment policy that "fall[s] more harshly on one group than
another." Raytheon Co., 540 U.S. at 52. Sturgill has only alleged
that Norfolk Southern has a policy not to hire individuals with
high BMIs. Sturgill has not alleged how this policy impacts one
group of individuals more harshly than another.

To the extent Sturgill wants the court to infer that the
policy impacts individuals with high BMIs more harshly than
individuals without high BMIs, the policy is not facially neutral.
The policy plainly falls more harshly on individuals with high
BMIs. Although this policy is facially discriminatory, a high BMI
in and of itself is not a disability. See supra Part III.A.1. Nor
is a high BMI always causally related to a disability. See Second

Am. Compl. ¶ 21. Therefore, the policy does not facially discriminate on the basis of disability.

To the extent Sturgill wants the court to infer that the policy impacts individuals with high BMIs that are causally related to a disability more harshly than individuals with high BMIs that are not causally related a disability, the policy does not treat these groups differently. By not hiring any individual with a high BMI, both groups are treated the same. Thus, without additional allegations, the court is unable to reasonably infer that Sturgill is contesting a facially neutral policy that falls more harshly on one group than another. See Raytheon Co., 540 U.S. at 52. Accordingly, Sturgill has not pled a disparate-impact claim.

Nonetheless, Sturgill asserts that he can plead a disparate-impact claim by alleging that Norfolk Southern's policy had an adverse impact on him alone. Mem. Opp. at 5-6. Courts analyzing disparate-impact claims on the basis of an adverse impact on an individual do so in the context of "qualification standards . . . that screen out or tend to screen out an individual with a disability." 42 U.S.C.A. § 12112(b)(6) (emphasis added); see, e.g., Williams v. ABM Parking Servs. Inc., 296 F. Supp. 3d 779, 788-90 (E.D. Va. 2017) (Ellis, J.) (analyzing a challenge to a qualification standard as a "disparate impact claim"). In those cases, the individual challenging the qualification policy alleges that despite the challenged policy, he or she is a "qualified

individual" under the ADA. See 42 U.S.C. § 12111(8) (defining "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires"). This means that the individual challenging the qualification policy also alleges (1) that the challenged policy is not related to the performance of an "essential function" of the job, and/or (2) that making an exception to the challenged policy would be a "reasonable accommodation." See id.

The court previously found that Sturgill had sufficiently alleged that he is a "qualified individual." Mem. Op. & Order at 12-13; see supra note 3. Sturgill continues to allege that he is a qualified individual. Second Am. Compl. ¶¶ 17-18. However, Sturgill has not alleged any facts that would enable the court to make any inference regarding how the challenged policy may or may not relate to the performance of an "essential function of the job." Nor has Sturgill alleged any facts that would enable the court to make any inference regarding whether an exception to the BMI policy would be a "reasonable accommodation." On the contrary, Sturgill alleges he does not need an accommodation. Second Am. Compl. ¶ 18; see supra note 9. Sturgill was free to plead in the alternative that an exception to Norfolk Southern's Policy would be a reasonable accommodation. See Fed. R. Civ. P. 8(d)(2). But,

Sturgill has not done so. Accordingly, Sturgill has not pled a disparate-impact claim under a qualification standard theory.

### V.   CONCLUSION

Sturgill's Second Amended Complaint raises two disparate-treatment claims: (1) an actual disability claim, and (2) a "regarded as" disability claim. See supra Part III. Sturgill's Memorandum in Opposition asserts that he has also raised a disparate-impact claim. See supra Part IV.

Norfolk Southern's Motion to Dismiss these claims is **GRANTED IN PART AND DENIED IN PART.** Norfolk Southern's Motion to Dismiss is **GRANTED** as to Sturgill's actual disability claim and disparate-impact claim, which are hereby **DISMISSED.** Norfolk Southern's Motion to Dismiss is **DENIED** as to Sturgill's "regarded as" disability claim, one of his disparate-treatment claims, which shall go forward.

The Clerk is **DIRECTED** to forward a copy of this Opinion to counsel for all parties.

**IT IS SO ORDERED.**

/s/
Rebecca Beach Smith
United States District Judge

REBECCA BEACH SMITH
UNITED STATES DISTRICT JUDGE

August 7, 2019

**INDEX**

I.    BACKGROUND ................................................. 1

II.   STANDARD OF REVIEW ........................................ 5

III.  DISPARATE-TREATMENT CLAIM ................................. 6

      A. Disability .......................................... 7

         1. Body Mass Index Disability Claim ................. 8

         2. "Regarded As" Disability Claim .................. 11

      B. Causation .......................................... 16

IV.   DISPARATE-IMPACT CLAIM .................................. 20

V.    CONCLUSION ............................................. 24